GeeeN, Judge,
delivered the opinion:
This case is an action based upon the provisions of a contract to which reference is hereinafter made. The suit is brought in alternative form: First, to recover a payment required to be made in accordance with the terms of the contract, and second, to recover damages for a breach of the contract. There is no dispute over the material facts as set out in the findings, and the case is submitted in argument by the respective counsel on the theory that plaintiff’s right to recover depends entirely upon the determination of a legal question.
The plaintiff is trustee in bankruptcy of the estate of L. Gordon Leach, who about January 21, 1922, made a con *330 tract with the defendant to operate a public bathhouse which had been constructed by defendant on the Tidal Basin in Potomac Park, Washington, D. C. This contract, among other things, provided that it might “ be revoked at any time upon thirty (30) days’ notice, provided the United States purchases the equipment owned by the concessionaire and in use in connection with the operation and maintenance of the bathing establishment, with the exception of supplies for the refreshment stand. In this event, the purchase price of this equipment shall be appraised by the party of the first part and the concessionaire, such price shall not be greater, however, than the original cost, less reasonable depreciation.”
In accordance with the provisions of this contract, the said Leech operated the public bathhouse which the defendant had constructed on the Tidal Basin from the date of the contract to March 9, 1925, at which time he was advised by a letter from the officer who had executed the contract that the agreement was canceled and he should remove his property as soon as possible as Congress had passed an act providing for the removal of the bathhouse which he operated.
In fact, Congress had not passed any act which made the removal of the bathhouse obligatory, but had merely passed an act making an appropriation for its removal. Not only was there no legislation passed directing the removal of the bathhouse but there was no legislation authorizing the appropriation for its removal, as is usual in such cases. Nor did the act direct that notice should be given the concessionaire to remove his property, but the contract provided that it might be revoked upon thirty days’ notice and this gave the Government the right to terminate the contract and require the concessionaire to remove his equipment. This having been done, the contract imposed the obligation upon the Government to pay for the property the appraised value thereof if the contract was still in force.
Later a second notice was given Leech to remove his property, but he refused so to do, not on the ground that the Government had no right to cancel the contract, or that its officials lacked authority to give him notice of its ter *331 mination, but on the ground that the United States was obliged to purchase this property from him under the cancellation clause of the contract which is set out in the findings. Evidently the concessionaire considered that as the Government was making no move to have the property appraised after its removal, the defendant then was not recognizing an obligation to pay for the equipment removed. However this may be, it appears that subsequently, with the consent of both parties to the contract, an appraisal of this property was made in accordance with the provisions of the contract, and in May, 1926, the appraisal was agreed to at the value of $6,002.95. It will be observed that both parties were treating the contract as still in force and were conforming to its terms up to this point. But, while the officials with whom Leech had been dealing evidently intended he should be paid, no payment has since been made.
The only defense set up in this case is that the Government, as a contractor, can not be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as a sovereign. We think that there is grave doubt as to whether an act of Congress that provides for the removal of a Government building, with reference to which some party has acquired a contractual right, comes within this principle, but the situation of each of the parties to the case makes it unnecessary for us to determine this question.
When we examine the acts of Congress under which it is claimed on behalf of the defendant that the contract was canceled and the bathhouse ordered removed, we find that they are merely appropriation bills. Contrary to the usual practice, no prior bill was passed authorizing these appropriations. With this departure from the usual practice we have no concern except to determine what Congress actually did that pertains to the case at bar. Referring again to the act of Congress concerning which so much is said in argument, we find that it did not direct that the concession should be revoked. In fact it made no mention of the contract whatever, although if the appropriation which was made was used in the manner which seems to have been *332 intended the effect necessarily would have been to have left the concessionaire with no bathhouse to operate. But when this act was passed and after it was passed there was-nothing to prevent the Government from carrying out its-agreement through a revocation of the concession in accordance with the terms of the contract, and there was no* reason why it should not do so, but on the contrary every" reason in equity and justice why it should comply therewith. It is true that Colonel Sherrill, director, acting for-the Government, stated in a notice to the concessionaire that — -“ In view of this legislation [the act of Congress - above referred to] I am compelled * * * to hereby cancel your agreement * * * for operating ■ this bath- ■ ing beach,” and requested a removal of the concessionaire’s-, property. The concessionaire refused to do this- on the ground that the Government was obliged to purchase this-property from him under the cancellation clause1 of the' contract. Recognizing the justice of this action, the Government, through its officials, took over the property, agreed to an appraisement and to the appraisal, and stil-l has- it in storage. It thus appears that the concessionaire- was insisting on his right to have the contract revoked in the1 manner - provided by the contract. To this the Government assented, and accordingly proceeded to take over certain property in accordance with the terms of the agreement, and appraised" it. Everything was done except to make final payment in-accordance with the terms of the contract. The action off Congress was in no way inconsistent with these proceedings, and there was nothing in the legislative action that forbade- or prevented payment in accordance with the contract.
The only remaining question relates to the amount off plaintiff’s recovery. Plaintiff’s suit is brought in the alternative : First, for the appraised value of the property on the-theory that the concession was revoked in the manner provided for in the agreement between the parties; and, second,, for damages by reason of alleged breach of the contract... We have shown that the defendant did not breach the contract, but has complied therewith except that payment has not been made in accordance with the agreement. The plain- ■ tiff therefore can not'recover any special damages-in the- *333 case, but only for tbe appraised Value of the property in accordance with the terms of the agreement, less a credit to»' defendant for electric light bills paid by the Government. Judgment will accordingly be rendered in favor of the plaintiff for $5,931.32. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge;; and Booth, Chief Juátice, concur.